UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DARYL ANTONIO BROWN,

    Plaintiff,

v.

CAUSE NO. 3:21-CV-181 DRL-MGG

INDIANA DEPARTMENT OF
CORRECTIONS *et al.*,

    Defendants.

## OPINION AND ORDER

Daryl Antonio Brown, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

According to the complaint, Mr. Brown was participating in the Recovery While Incarcerated (RWI) Addiction Treatment Program at the Westville Correctional Facility. ECF 2 ¶ 5. Successful completion of the program may result in a sentence time cut. *Id.* ¶ 18. However, on August 28, 2020, Mr. Brown was falsely accused of fighting. *Id.* ¶ 2. He was removed from the program and locked in a detention cage pending an

administrative investigation. *Id.* ¶ 1. The person he was accused of fighting, John Salter, was also removed from the program pending investigation. *Id.* ¶ 2.

No investigation occurred and no conduct report was issued. Instead, Mr. Brown was moved to the floor where he lived before entering the RWI Treatment Program and no longer received the state pay he received in the program. ECF 2 ¶ 3. However, Mr. Salter was able to continue in the program. *Id.* ¶ 5.

When Mr. Brown complained to his case manager, he was reclassified into a job in the kitchen and was told he would re-enter the RWI Treatment Program in two weeks. ECF 2 ¶ 6. He objected to being placed in the kitchen and appealed the decision. *Id.* ¶ 7. As a result of the administrative appeals process, Mr. Brown was returned to the program and received back pay for the months he was idle. *Id.* ¶ 16. In this suit, Mr. Brown raises two claims: (1) an equal protection violation based on the differential treatment that he, an African American, received over Mr. Salter, a Caucasian-American, and (2) a due process violation from being removed from the RWI Treatment Program based on an unproven allegation of fighting.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To state such a claim, a prisoner must allege that the "defendants intentionally treated him differently because of his race . . . ethnicity, sex, religion, or other proscribed factor . . .." *Id.* at 719–20 (citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)); *see also David K. v. Lane*, 839 F.2d 1265, 1271–72 (7th Cir. 1988) (collecting cases and noting discrimination

2

must be intentional, purposeful, or have a discriminatory motive). Thus, Mr. Brown must show "the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* Here, Mr. Brown alleges that both he and Mr. Sanders were accused of fighting and pulled from the program. The accusation was unfounded and the Caucasian offender was immediately returned to the program while the African-American offender was not. Mr. Brown may proceed on an equal protection claim.

Although Mr. Brown has stated an equal protection violation, he may sue only those defendants who were personally involved in the alleged violation. A lawsuit against an individual under 42 U.S.C. § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). There are no allegations of unequal treatment in the initial removal from the program for fighting, so the defendants whose involvement was limited to that initial action must be dismissed. The unequal treatment comes into play with the decision about what to do with each offender after the fighting charges were not pursued. The complaint alleges that Michelle Briggs made the decision about which offenders were admitted to the RWI Treatment Program. ECF 2 ¶¶ 5, 12. Therefore, she has the requisite personal involvement for potential liability. The same is not true for Case Manager Dianne Malfese or Classification Supervisor Mr. Kreuger. Mr. Brown complained to them about the classification decision. At that point the allegedly discriminatory action had already occurred without their involvement. Neither had a duty to independently investigate and remedy an alleged constitutional violation. "Only

persons who cause or participate in the [constitutional] violations are responsible" for those violations; failure to investigate a prisoner's grievance "does not cause or contribute to the violation." *George v. Smith*, 507 F.3d. 605, 609 (7th Cir. 2007) (citations omitted).

Next, Mr. Brown alleges his due process rights under the Fourteenth Amendment were violated when he lost his place in the RWI Treatment Program and state pay based on a charge of fighting that was dropped and never proven. Before a prisoner can claim due process protections, he must first establish that he was denied a protected liberty or property interest. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). Here, Mr. Brown complains about the loss of his state pay and removal from a program that might earn him good-time credits upon successful completion. But he has no liberty interest in a prison job classification. *See DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000), *abrogated in part on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). And "[t]here is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment." *Zimmerman v. Tribble,* 226 F.3d 568, 571 (7th Cir. 2000) (citation omitted). Consequently, "the denial of access to educational programs does not infringe on a protected liberty interest." *Id.* Moreover, because the successful completion of the program is not inevitable, the denial of the opportunity to earn good-time credits through those programs "does not inevitably affect the duration of the sentence, and does not deprive him of constitutional guarantees." *Id.* (internal quotation marks and citation omitted); *see also Sandin v. Connor,* 515 U.S. 472, 487 (due process is required only when state action "will inevitably affect the duration of [a prisoner's] sentence"). Here, Mr. Brown does not

4

allege that he completed the RWI Treatment program or that completion was inevitable absent his early termination. Therefore, not only does Mr. Brown have no constitutional right to continued participation in the RWI Treatment Program, but he cannot challenge the process he was given regarding it either. *See Zimmerman*, 226 F.3d at 571; *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments.").

Finally, Mr. Brown names the Indiana Department of Correction and Wexford Medical Foundation of Indiana as defendants. But state agencies such as the IDOC are immune from suit for damages pursuant to the Eleventh Amendment. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). There are three exceptions to the Eleventh Amendment immunity, *see MCI Telecommunications Corp. v. Ill. Commerce Comm'n*, 183 F.3d 558, 563 (7th Cir. 1999), but none applies here. Thus, he cannot proceed against the IDOC. And Wexford Medical Foundation cannot be held liable simply based on its status as an employer. *See Howell v. Wexford Health Sources*, 987 F.3d 647, 654 (7th Cir. 2021). Instead, Mr. Brown must point to an unconstitutional policy or practice attributable to the company. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020). Nothing in the complaint suggests the allegedly discriminatory program decisions are part of an ongoing a pattern or practice.

For these reasons, the court:

(1) GRANTS Daryl Antonio Brown leave to proceed against Michelle Briggs in her individual capacity for compensatory and punitive damages for not reinstating Mr.

Brown to the RWI Treatment Program because of his race in violation of the Fourteenth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Indiana Department of Correction, John Galipeau, Lawrence Machin, Dennis Hood, Dianne Malfese, Mr. Krueger, and Wexford Medical Foundation of Indiana;

(4) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Michelle Briggs at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Michelle Briggs to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

June 29, 2021　　　　　　　　　　　　　　　　*s/ Damon R. Leichty*
　　　　　　　　　　　　　　　　　　　　　　Judge, United States District Court